# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin



**CLERK'S OFFICE**
A TRUE COPY
Dec 09, 2020
s/ JeremyHeacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Cellular Telephone Assigned Call Number 414-403-0637, with International Mobile Subscriber Identity 310120239441281 / Electronic Serial Number 089191296901345312, with subscriber Tmara Abidalrahim, 6560 Hill Ridge Drive, Greendale, Wisconsin, whose wireless service provider is Sprint, 6480 Sprint Parkway, Overland Park, Kansas.

Case No. **20-M-477 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the \_\_\_\_\_Eastern\_\_\_\_\_ District of \_\_\_\_\_Wisconsin\_\_\_\_\_, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 666 | Bribery concerning programs receiving federal funds |
| 18 U.S.C. Section 1343 | Wire fraud |

The application is based on these facts:
See Attached Affidavit. To comply with 18 U.S.C. §§ 3121-27, because the warrant will also function as a pen register order, I also certify that the information sought is relevant to an ongoing FBI criminal investigation.

- ☐ Continued on the attached sheet.
- ☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI Special Agent Erin Lucker
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephone__ *(specify reliable electronic means).*

Date: __12-9-20__

*Judge's signature*

City and state: Milwaukee, WI

Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Erin Lucker, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 414-403-0637, with International Mobile Subscriber Identity 310120239441281 / Electronic Serial Number 089191296901345312, with subscriber Tmara Abidalrahim, 6560 Hill Ridge Drive, Greendale, Wisconsin (the "Target Cell Phone"), whose service provider is Sprint, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the Federal Bureau of Investigation (FBI), and I have been since November 2016. I am currently assigned to the Milwaukee Office of the FBI. During my career in law enforcement, I have participated in violent crime and white collar crime investigations. I am currently assigned to the FBI Milwaukee White Collar Crimes squad, which

1

involves investigations of public corruption matters and complex financial crimes. Previously, I was assigned to the Milwaukee Area Violent Crimes Task Force, which investigated violent crimes such as commercial robberies, carjackings, bank robberies and violent criminal enterprises. I have gained experience in the conduct of criminal investigations through previous case investigations, formal training, and in consultation with law enforcement partners in local, state, and federal law enforcement agencies.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C §§ 666 (bribery concerning programs receiving federal funds) and 1343 (wire fraud) are being committed or will be committed by KHALED A. ABIDALRAHIM (RAHIM). There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of additional individuals who are engaged in the commission of these offenses.

6. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7. As mentioned above, the United States, including the FBI, is conducting a criminal investigation of RAHIM and unidentified subjects regarding possible violations of 18

2

U.S.C §§ 666 and 1343. Specifically, the FBI is investigating whether RAHIM serves as a middleman for bribery payments to local elected officials and/or whether RAHIM is perpetrating a fraud by falsely representing to be able to accept bribes on behalf of local elected officials.

8. By way of background, the FBI has received reports from sources that RAHIM, the owner of La Luna Liquor, located at 552 West Maple Street, Milwaukee, Wisconsin, solicits bribes from local business owners. For example, in March 2019, a Confidential Human Source (CHS-1) provided information regarding RAHIM. CHS-1 has been actively providing information to the FBI since September 2008. Information provided by CHS-1 has been corroborated through surveillance and other investigative measures. CHS-1 is wanted for fraud in a country in the Middle East, and CHS-1 has received Deferred Action benefits due to CHS-1's willingness and ability to provide timely and accurate information to the FBI.

9. In March 2019, CHS-1 reported that a former employee of La Luna Liquor had told CHS-1 that RAHIM assisted an unidentified Indian business owner with obtaining a liquor license by paying a bribe. According to the employee, RAHIM told the Indian business owner he needed to pay City of Milwaukee Alderman JOSE PEREZ in order to obtain the liquor license. The employee explained that he/she personally observed the Indian business owner pay RAHIM $5,000 in cash at La Luna Liquor in exchange for RAHIM'S help in obtaining the liquor license. In addition, RAHIM put conditions on the Indian business owner, which restricted the business owner from selling certain items that would have competed with RAHIM'S sales at La Luna Liquor.

10. The FBI has verified that the employee described above did in fact work for RAHIM. Due to the employee's close association with RAHIM, to avoid jeopardizing any investigation, law enforcement did not directly contact the employee.

3

11. The FBI has verified that RAHIM is not a registered lobbyist, and I am aware that RAHIM has made statements that he does not consider himself a lobbyist.

12. As noted above, the employee reported that RAHIM had represented that he was taking money on behalf of Alderman JOSE PEREZ. PEREZ currently represents the City of Milwaukee's 12th District and is the chair of the Zoning, Neighborhoods and Development Committee. PEREZ and other sources have reported to the FBI that there is "Aldermanic privilege" in the City of Milwaukee, meaning that Common Council members will defer to the wishes of the Alderman presiding over the area when voting for matters requiring Committee and Common Council approval, such as liquor licenses and zoning changes.

13. On June 25, 2020, due to concerns that RAHIM had been representing that he could bribe an alderman, CHS-1 introduced Undercover Employee (UCE-1) to RAHIM at La Luna Liquor. RAHIM is the owner of not only La Luna Liquor, but also El Lucero Liquor, located at 1132 West Lincoln Avenue, Milwaukee, Wisconsin. Both businesses are located within City of Milwaukee's 12th District. UCE-1 purported to be a private equity manager for a development company looking for properties in the Milwaukee, Wisconsin, area. During this meeting, RAHIM stated he is very well connected, and that he is friends with the Alderman, State Assembly person, and County Supervisor. The CHS, UCE-1, and RAHIM drove from La Luna Liquor to El Lucero Liquor in order for RAHIM to show UCE-1 the second location. During the drive back to La Luna Liquor, RAHIM pointed out a gas station owned by an Indian businessman and advised he helped the businessman with acquiring the gas station. In addition, RAHIM pointed out Tres Hermanos Restaurant, located at 1332 West Lincoln Avenue, Milwaukee, Wisconsin, and described the large, outdoor seating area. RAHIM initially stated "we" gave the large, outdoor seating area to the owner. RAHIM then stated that he meant that

"the City" gave it to the owner. Tres Hermanos Restaurant is located within City of Milwaukee's 12th District.

14. During this meeting, RAHIM provided UCE-1 with RAHIM'S contact telephone number, which is identified 414-403-0637, the Target Cell Phone.

15. On July 13, 2020, UCE-1 sent text messages to the Target Cell Phone in order to set up a meeting with RAHIM for the next day. On July 14, 2020, UCE-1 picked RAHIM up at La Luna Liquor and drove to a restaurant in Milwaukee, Wisconsin. During the drive to the restaurant, UCE-1 advised he and his business partners were excited about the potential in the city, and that UCE-1 liked the "southside" area. UCE-1 explained that he wanted RAHIM to make introductions. RAHIM stated "I am not a cheap guy" but reiterated that he had "big connections." RAHIM advised he would look at the properties UCE-1 was interested in, give advice, and consult, but that compensation would be important. UCE-1 asked RAHIM for a number. RAHIM replied that he needed to know what UCE-1 was asking RAHIM to do. RAHIM advised that he does things the "legit" and legal way. However, RAHIM then told UCE-1 to not go behind RAHIM's back, and stated "the bird, when it flies over Milwaukee, must ask for permission."

16. During this meeting, UCE-1 and RAHIM discussed the possibility of developing a water front property along Lake Michigan. RAHIM received a phone call from an unknown individual and asked the unknown individual to find out if the lot where the boats are was part of the county. A review of pen register data during this time period for the Target Cell Phone revealed the Target Cell Phone received a call from telephone number 414-610-8180 at approximately 7:10 p.m. CDT on July 14, 2020. A search of publicly available information

5

associated telephone number 414-610-8180 with Milwaukee County Supervisor Sylvia Ortiz-Velez.

17. On July 16, 2020, UCE-1 sent RAHIM text messages at the Target Cell Phone thanking RAHIM for meeting with UCE-1. UCE-1 sent another text message to RAHIM at the Target Cell Phone asking if RAHIM'S friend got back to RAHIM about the lakefront land. A review of pen register data for the Target Cell Phone revealed three outgoing telephone calls from the Target Cell Phone to 414-610-8180, and one incoming call from 414-610-8180 to the Target Cell phone on July 17, 2020. A search of publicly available information associated telephone number 414-610-8180 with Milwaukee County Supervisor Sylvia Ortiz-Velez. On July 17, 2020, RAHIM sent UCE-1 a text message from the Target Cell Phone that the property was owned by the county.

18. On July 21, 2020, UCE-1 exchanged text messages with RAHIM at the Target Cell Phone in order to set up a meeting on July 23, 2020.

19. On July 23, 2020, UCE-1 met RAHIM at La Luna Liquor and provided information on two properties of interest located at 212 East Mineral and 100 East National, Milwaukee, Wisconsin. UCE-1 advised he was concerned about the zoning for the property located at 212 E. Mineral. Any proposed zoning change would be considered by the Zoning, Neighborhoods and Development Committee chaired by Alderman PEREZ and would have to be approved by the City of Milwaukee. Despite these requirements, RAHIM stated "zoning, I personally guarantee it." UCE-1 asked what needed to be allocated for funding for RAHIM's side of the house. RAHIM stated he is not cheap, and that the car does not go without gas. RAHIM told UCE-1 the startup fee is $10,000, and that RAHIM "gets a cut" of each property. UCE-1 interpreted this to mean RAHIM gets a percentage of the purchase price of each property. UCE-1

told RAHIM that UCE-1 had a token of appreciation for RAHIM taking the time to meet with UCE-1. UCE-1 told RAHIM it was $500, and RAHIM responded that was an insult. UCE-1 stated it was for the two hours UCE-1 met with RAHIM the last time. RAHIM asked "can you afford my hourly wages?" RAHIM reached in to his pockets and pulled out large wads of cash.

20. During this meeting, UCE-1 asked RAHIM about the water front property. RAHIM advised the property falls under the county, that it is owned "by the people," and that it cannot be sold. RAHIM stated he checked with "very, very, very strong sources," but advised "there might be some arms twisted" after the election in November.

21. On August 6, 2020, and August 10, 2020, UCE-1 exchanged text messages with RAHIM at the Target Cell Phone in order to set up a meeting on August 12, 2020. On August 12, 2020, UCE-1 met RAHIM at a restaurant located in Milwaukee, Wisconsin, and introduced RAHIM to UCE-2 and UCE-3, who acted as UCE-1's business partners. During this meeting, RAHIM, UCE-1, UCE-2, and UCE-3 discussed the properties of interest located at 212 East Mineral and 100 East National. RAHIM advised UCE-2 to figure out what they wanted to do with the properties, and to "get it done." UCE-2 asked what RAHIM wanted from them, and RAHIM responded "gas."

22. On November 3, 2020, UCE-1 sent a text message to the Target Cell Phone confirming a meeting with RAHIM later that day. RAHIM met UCE-1, UCE-2, and UCE-3 for dinner at a restaurant located in Milwaukee, Wisconsin. After dinner, RAHIM, UCE-1, UCE-2, and UCE-3 went to a bar located in Milwaukee, Wisconsin. RAHIM, UCE-1, UCE-2, and UCE-3 discussed the two properties of interest. RAHIM recommended UCE-1, UCE-2, and UCE-3 make an offer on one of the properties, but with a contingency that the property will be rezoned for mixed use. RAHIM guaranteed the building could be zoned as mixed use because RAHIM

7

knew the area. RAHIM told UCE-1, UCE-2, and UCE-3 that he is a businessman, and that RAHIM does not consider himself a lobbyist. During this meeting, UCE-2 asked RAHIM what the next steps were. RAHIM responded "I said it before and I'll say it now, what does the car need?" Later during the meeting, UCE-2 stated that he needed RAHIM's help, referring to rezoning the property. RAHIM responded "gas, that's the magic word, gas." RAHIM, UCE-1, UCE-2, and UCE-3 discussed meeting again in a couple of weeks.

23. A review of pen register data for the Target Cell Phone revealed the Target Cell Phone called telephone number 414-687-5103 at approximately 10:30 a.m. CST on November 10, 2020. Further review of pen register data for the Target Cell Phone revealed the Target Cell Phone exchanged three text messages with 414-687-5103 on November 17, 2020. A search of publicly available information associated telephone number 414-687-5103 with PEREZ. In addition, PEREZ provided 414-687-5103 as a contact telephone number to law enforcement in December 2019.

24. On November 19, 2020, UCE-2 and UCE-3 met RAHIM at La Luna Liquor and discussed the properties of interest located at 212 East Mineral and 100 East National. UCE-2 and UCE-3 advised they wanted to change the zoning of the property at 212 East Mineral Street from industrial to mixed use, to include a restaurant or bar. RAHIM advised the property would be rezoned for mixed use "100% guaranteed, case closed." RAHIM stated he does not consider himself a lobbyist, but rather someone who can get things done. RAHIM asked UCE-2 and UCE-3 about "gas." RAHIM stated he has not worked with lobbyists because RAHIM is the one that "outsmarted everybody." RAHIM further stated the he tells people to save money on lobbyists by going to RAHIM, but that does not mean RAHIM does things "cheap." RAHIM advised he worked on a project by project basis, and would work with UCE-2 and UCE-3 on any

8

projects in Milwaukee. RAHIM told UCE-2 and UCE-3 to not go behind RAHIM's back because RAHIM will find out.

25. RAHIM told UCE-2 and UCE-3 that he had been asked to run for mayor of Milwaukee. RAHIM advised he was thinking about it, but stated "if I'm inside I get controlled, if I'm outside I control them all."

26. RAHIM asked UCE-2 and UCE-3 what else they wanted. UCE-2 responded it was time for RAHIM to say what he wanted. RAHIM pointed to a piece of paper and stated "this" was a down payment. RAHIM asked UCE-2 what the number was, and UCE-2 responded "ten." RAHIM reiterated that he worked on a case by case basis, and stated "you gotta give me ten thousand dollars, cash." RAHIM stated he would get UCE-2 and UCE-3 everything they wanted, and then UCE-2 and UCE-3 needed to make RAHIM happy. RAHIM stated "off of this number, I'm getting something," pointing to the purchase price of the property. RAHIM further stated "this is just gas money," referring to the $10,000. UCE-2 replied that he wanted to be comfortable with how it happens. RAHIM replied "who gives a fuck what happens, you going to get the thing done, right?" UCE-2 stated they did not want to get hung up politically because they were not from here, and RAHIM replied "I agree with you 100%, but knowing me, I wouldn't've said 'guarantee' if I wasn't guaranteeing it."

27. Later in the meeting, UCE-2 stated they were done talking business. RAHIM responded they were not done and, referring to the $10,000, asked "what's with this number, where is it?" UCE-2 responded they will come back after Thanksgiving to settle up. The UCEs are arranging a meeting in December 2020 to make the $10,000 payment to RAHIM.

28. The authorization to collect the location of the Target Cell Phone would assist law enforcement with surveillance of RAHIM that would identify additional meeting locations and

9

potential co-conspirators involved in the bribery concerning programs administered by the City of Milwaukee, which receives in excess of $10,000 in federals funds annually. For example, the location data would provide evidence of where RAHIM went and with whom he met after receiving the $10,000 payment. Without the use of the location data, law enforcement may be required to conduct surveillance in a manner that could result in law enforcement being discovered by RAHIM or other possible targets of the investigation. Alternatively, if the location information and other investigative material show that RAHIM does not contact or meet with any local officials, this would provide evidence that he may be engaged in a scheme to obtain money from the UCEs by means of materially false pretenses and representations.

29. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily

10

serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

30. Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available.

31. Based on my training and experience, I know that Sprint can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Sprint typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

32. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

33. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the

11

Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

34. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

35. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

12

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number 414-403-0637, with International Mobile Subscriber Identity 310120239441281 / Electronic Serial Number 089191296901345312, with subscriber Tmara Abidalrahim, 6560 Hill Ridge Drive, Greendale, Wisconsin (the "Target Cell Phone"), whose wireless service provider is Sprint, a company headquartered at 6480 Sprint Parkway, Overland Park, Kansas.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of Sprint including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

1

## II. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. §§ 666 (bribery concerning programs receiving federal funds) or 1343 (wire fraud) involving KHALED A. ABIDALRAHIM and other unidentified subject(s).

2